Morphy, J.
The petitioners seek to recover of the defendant $849 34, on a bill for gas furnished to the Planters’ Hotel in Canal Street up to the first of November, 1840, on the allegation that he is bound for, and has assumed to pay this amount. The defendant admits that he is indebted to the plaintiffs in a sum of about $100. He says that he can fix no precise amount, because they have refused to make out a bill for the gas he applied for, although requested so to do ; that he has always been ready and willing to pay said sum, but denies owing them any other amount. The defendant further specially denies, that he ever assumed to pay the plaintiffs’ claim as set forth in their account; he avers that if he ever uttered any words, which might be construed into an assumption to pay said claim, it was through an error created by the plaintiffs themselves, who insisted that he was liable for the debt, and who unjustly and oppressively refused to furnish gas to his hotel unless their claim was settled. There was *379 a judgment below for $100 only, from which the plaintiffs appealed.
The bill annexed to the petition, debits the Planters’ Hotel for the whole amount claimed, Avithout stating either the space of time during which the gas was furnished, or the names of the persons who applied for, or used it; but from the evidence it appears, that the Planters’ Hotel was sold by the defendant to one Armstrong, in December, 1836; that the latter had the gas fixtures put up, and light furnished to the house ; that, in May, 1839, Samuel N. Hite purchased the establishment, and kept it until December following, when he leased it to one Oliphant, by whom it was kept four or five months ; after which it was repurchased by the defendant, in 1840, at a sale made by the syn-dic of Hite’s creditors; that almost all the gas for which payment is now demanded of the defendant, was applied for and consumed by his predecessors, in whose business he is not shown to have been concerned ; and it is not pretended, that before he resumed possession of the property, he was ever asked or called upon to pay the money due to the company. John M. Lee testifies, that while he was sick at the hotel, in January, 1840, he heard in his bed-room, a conversation between Hite and the defendant, in which both agreed, that the gas should be paid for, to prevent it from being stopped; that this was said at a time when Wells, the secretary of the company, had become pressing for the amount of their bill ; he thinks that Oliphant was present. Allen, an officer of the company, says, that he several times applied for payment at the hotel; that his last application was to Ruddock, who was in charge of it for Oliphant; that he told Ruddock he was directed to stop the gas until the bill was paid; that Ruddock answered that the hotel had been taken out of his hands on that morning, and th*at Paulding was to carry it on; that he would speak to the latter, who was standing by, and he accordingly informed him of what witness had said ; that Paul-ding requested that the gas should not be cut off, and said he would call the next day and settle with Wells; that Allen had an order to cut off the gas, and a black boy-in attendance to carry it into effect. After this conversation, which took place in May, 1840, the gas continued to be furnished until about the *380 time the hotel was closed. Paulding called at the gas office and asked for his bill; but, upon that made out against the Planters’ Hotel being presented to him, he denied having assumed to pay it; and said, he was ready to pay for the gas he himself had used, and would pa]r for nobody else. This testimony is, perhaps, too loose, to prove a positive engagement on the part of the defendant to pay a large amount of money, for which he was clearly not responsible to the company ; but even were it considered as sufficient, the consent he gave, under the circumstances disclosed by the record, is not such a one as should bind him. The company, which had neglected to collect monthly their bills for gas, according to their own regulations, and had suffered them to accumulate to a large amount, had no right to impose upon the defendant the condition of paying these arrearages, due by the insolvent, in order to obtain gas for his hotel. Having the sole and exclusive privilege of vending gas lights in the cities of New Orleans and Lafayette, they are, we apprehend, bound under their charter, to supply gas to all persons who call for it, on their paying, or offering to pay for the same. Act of 1833, p. 33, § 1. Act of 1835, p. 107, § 36. The announcement that, unless the bill was paid, the gas would be cut off from his large hotel, which must have occasioned the defendant a very serious injury in his business, was an unjust and illegal requirement; it was a threat, under the influence of which the promise relied on was clearly made, to avoid the immediate injury he would have sustained, had it been carried into effect. Such a promise is void for want of consent, and a legal consideration. Civ. Code, arts. 1844,1845,1887. “ Where there is no other cause for the contract,” says article 1853, “any threats, even of slight injury, will invalidate it.” In the present case it is difficult to conceive a motive for the defendant’s promise, other than the feat of injury created by the threats of the company’s agent. As relates to the conversation mentioned by Lee, it took place out of the presence of the plaintiffs, or of any of their agents. The defendant said, that the gas previously furnished should be paid for; but came under no promise or obligation to them to pay for it himself. It is true, as was held in Flood v. Thomas, (5 Mart. N. S. 560,) that a debt due by another is a sufficient consideration upon which to base a promise *381 to pay; bat such promise, in order to be binding, must be positive and freely made. The intention of becoming surety for the debtor must be unequivocally expressed, and the contract must be made with the creditor. Civ. Code, arts. 3004, 3008.

Judgment affirmed.

*

 G. Strawbridge, for a re-hearing, cited as to the proof of Paulding’s promise by the evidence of Lee, Amory v. Boyd, 5 Mart. 414. Lo're v. Poyntz, 5 Ib. N. S. 443. As to the effect of the promise, Mayor v. Bailly, 5 Mart. 322; Marigny v. Remy, 3 Mart. N. S. 607. Flower v. Lane, 6 Mart. N. S. 152. Pemberton v. Zachary, 5 La. 316. Civil Code, art. 1884. As to how far suretyship must be expressed, Cooley v. Lawrence, 4 Mart. 639. Guidry v. Vives, 3 Mart. N. S. 660. Shelmerdine v. Daffy, 4 Mart. N. S. 38. Lawrence v. Oakey, 14 La. 387.

Re-hearing refused.